**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

DAMON YOUNG,

    Plaintiff,

  v.

RENO; and JAMES DEGROOT,

    Defendants.

CIVIL ACTION NO.: 6:17-cv-131

---

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

 Before the Court is Defendants DeGroot and Reno's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) and 42 U.S.C. § 1997e(a).[1]  Doc. 45.  For the reasons that follow, I **RECOMMEND** the Court **DENY in part** Defendants' Motion to Dismiss, to the extent Defendants request dismissal for failure to exhaust administrative remedies.  However, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss for failure to state a claim

---

[1] On December 12, 2018, after being ordered to respond to Defendants' Motion to Dismiss by the Court, Plaintiff filed an Objection alleging Defendants failed to serve him with a copy of the Motion and requesting additional time to respond.  Doc. 52.  However, on that same date, Plaintiff also filed a "Motion Opposing . . . Motion to Dismiss," in which he laid out legal arguments in support of his exhaustion of administrative remedies and his claims of deliberate indifference against Defendants DeGroot and Reno.  Doc. 53.  At the conclusion of the document, he stated, "[T]he court should not grant defendants['] motion to dismiss."  Id. at 4.  It appears Plaintiff was aware of Defendants' arguments in the Motion to Dismiss because those arguments were discussed in Defendants' Motion to Stay, which Plaintiff did receive.  Id. at 1.  Regardless, more than two years have passed, during which time Plaintiff had sufficient opportunity to obtain a copy of Defendants' Motion to Dismiss.  Given that Plaintiff made no further attempt to respond to the Motion to Dismiss, and his "Motion Opposing . . . Motion to Dismiss" appears to be a comprehensive response to the issues of exhaustion and deliberate indifference, doc. 53, the Court finds no need to grant any additional time for Plaintiff to respond to the Motion to Dismiss, and thus, proceeds with this Recommendation.  Additionally, the Court notes certificates of service, indicating service by mail upon Plaintiff, were attached to Defendants' Motion to Dismiss and their brief in support of the Motion.  Doc. 45 at 3–4; Doc. 45-1 at 22–23.

of deliberate indifference.   As no other claims or Defendants would remain in this action,[2] I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.   I **DENY as moot** Plaintiff's Request to Proceed with Discovery, doc. 74.

## I.     Exhaustion of Administrative Remedies

Defendants DeGroot and Reno seek dismissal of Plaintiff's claims against them, alleging he failed to comply with the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).   Section 1997e(a) requires that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   § 1997e(a).

### A.     Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss.   Bryant v. Rich, 530 F.3d 1368, 1374–75 (11th Cir. 2008).   "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action.   Id. at 1374 (internal punctuation and citation omitted).   Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court.   Id.   In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the

---

[2]      On March 11, 2020, the Court dismissed without prejudice Plaintiff's claims against Defendants Allen, Gillis, Hutchinson, Pineiro, Shoemake, Smith, and Bobbitt.   Doc. 73.

parties have sufficient opportunity to develop a record."   Id. at 1376.

To evaluate the exhaustion of administrative remedies, first, the district court looks to the parties' factual allegations, and if they conflict, the court takes the plaintiff's version as true. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).   If, per the plaintiff's account, the administrative remedies have been exhausted, then the court proceeds to step two.   At step two, the defendants bear the burden of proving the plaintiff did not exhaust administrative remedies. Id.   At this stage, the court makes factual findings on whether the plaintiff exhausted the available remedies.   Id.   To the extent the factual findings lead to procedural dismissal as opposed to dismissal on the merits, the district court is free to make any findings necessary to resolve the issue.   Bryant, 530 F.3d at 1376–77.   If the remedies are not found to be exhausted, then dismissal is appropriate.   Turner, 541 F.3d at 1083.

**B.    Legal Analysis of Defendants' Exhaustion Arguments**

**1.    *Whether Plaintiff's mental health claims are premature.***

In their Motion to Dismiss, Defendants DeGroot and Reno first argue Plaintiff failed to exhaust his administrative remedies regarding his mental health treatment prior to filing his Complaint, and, as a result, his original Complaint was premature under the PLRA.   Doc. 45-1 at 10.   While the Eleventh Circuit has stated, "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint," Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012), it is unclear whether this language extends to situations where a plaintiff initially brings fully exhausted claims and then seeks to bring later exhausted claims via a supplement or amendment.

Here, Defendants DeGroot and Reno do not argue the claims in Plaintiff's original Complaint were not fully exhausted or Plaintiff failed to fully exhaust his mental health

grievance prior to filing his supplemental Complaint.[3]   Rather, they argue the original

Complaint was filed prior to the exhaustion of Plaintiff's mental health grievance.   Doc. 45 at

10.   The facts show Plaintiff did not file his Eighth Amendment mental health claims against

Defendants Reno and DeGroot in his original Complaint; instead, he waited until he had fully

exhausted his grievance concerning his mental health treatment and then brought claims against

Defendants DeGroot and Reno, with this Court's permission, via what this Court labeled

"Plaintiff's Supplement to Complaint."   Docs. 1, 8, 12, 17, 27, 53.   Unlike the present case,

Smith v. Terry involved a situation where a plaintiff attempted to cure an exhaustion defect in his

original complaint by later seeking to amend or supplement his complaint.   491 F. App'x at 83.

At least one district court has declined to apply Smith v. Terry to a situation where a plaintiff

added newly exhausted claims to an action that was properly exhausted at the time of filing   See

Brant v. Reddish, Nos. 3:13-cv-412, 2019 WL 4600366, at *11 (M.D. Fla. Sept. 23, 2019)

(holding "[a] prisoner . . . who fully exhausts a claim before filing suit[] may amend his

complaint to add a later arising, related claim providing the prisoner first fully exhausts his

administrative remedies as to that new claim").

       Additionally, the Sixth Circuit Court of Appeals has held "that the PLRA and Federal

Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were

exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint

contained at least one fully exhausted claim."   Mattox v. Edelman, 851 F.3d 583, 595 (6th Cir.

2017).   Other Circuits have also allowed the addition of later exhausted claims via amendment

---

[3]       Plaintiff moved to file his Amended Complaint on March 2, 2018, see doc. 12, at which time
Plaintiff contends his mental health grievance was fully appealed.   Doc. 53 at 2.   Defendants DeGroot
and Reno have submitted documentation with their Motion to Dismiss indicating Plaintiff's appeal of his
mental health grievance was completed by January 11, 2018.   Doc. 45-4 at 1.   Accordingly, there does
not appear to be a dispute as to whether the mental health grievance was fully exhausted prior to the time
Plaintiff brought his claims against Defendants DeGroot and Reno.

or supplement.   See Boone v. Nose, 530 F. App'x 112, 113 n.1 (3d Cir. 2013) ("Under the

Prison Litigation Reform Act, prisoners may file supplemental complaints if the claims in

question 1) have truly accrued since the beginning of the suit and 2) are exhausted per 42 U.S.C.

§ 1997e(a) before the supplement is filed."); Smith v. Olsen, 455 F. App'x 513, 515–16 (5th Cir.

2011) (reversing district court and allowing pros se inmate to proceed with new claims in his

second amended complaint that were exhausted after filing of original complaint but prior to

filing of his second amended complaint); Rhodes v. Robinson, 621 F.3d 1002, 1007 (9th Cir.

2010) (holding PLRA's exhaustion requirement satisfied with respect to new claims raised in

amended complaint, as long as new claims properly exhausted prior to tendering amended

complaint to the court); Barnes v. Briley, 420 F.3d 673, 678 (7th Cir. 2005) ("The filing of the

amended complaint was the functional equivalent of filing a new complaint . . . and it was only

at that time that it became necessary to have exhausted the administrative remedies against the

state defendants.").

The Court finds the law of other Circuits on this issue persuasive, and, as Defendants

DeGroot and Reno have not argued Plaintiff failed to fully exhaust the claims in his original

Complaint or that he failed to exhaust the claims before adding them, the Court rejects their

arguments regarding the timing of exhaustion.   See Romano v. Sec'y, DOC, No. 2:06-cv-375,

2011 WL 1790125, at *4 (M.D. Fla. May 10, 2011) ("The Court finds that the exhaustion

requirement of the PLRA only required Plaintiff to fully and properly exhaust the new claims

prior to the time he filed the amended complaint that included the new claims.").

Based on the above, I **RECOMMEND** the Court **DENY in part** Defendants DeGroot

and Reno's Motion to Dismiss, to the extent they contend Plaintiff's claims against them should

be dismissed due to Plaintiff's failure to fully exhaust his available administrative remedies prior

to filing the original Complaint.

### 2.     Whether Plaintiff's grievance was sufficient.

Defendants DeGroot and Reno also contend Plaintiff's grievance "fails to identify Defendant Reno or any particular incidents of Defendant Reno or Defendant DeGroot's alleged deliberate indifference towards him."   Doc. 45-1 at 11.   Contrary to Defendants DeGroot and Reno's suggestion, "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim."   Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).   Rather, "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'"   Jones v. Bock, 549 U.S. 199, 218 (2007).   Defendants have failed to point to any provision of the Georgia Department of Corrections' Standard Operating Procedures ("SOP") which requires Plaintiff to identify each Defendant by name or to identify the particular incidents of their deliberate indifference.   After reviewing the SOP Defendants submitted in support of their Motion to Dismiss, the Court finds nothing in it requiring Plaintiff to identify Defendants by name or to state each particular incident showing their alleged deliberate indifference.   Doc. 45-2.[4]   Rather, the SOP only states: "[A]n offender may file a grievance about any condition, policy, procedure, or action or lack thereof that affects the offender personally."   Id. at 6.   Defendants also submitted what appears to be Plaintiff's August 16, 2017 grievance regarding the state of his mental health treatment.   Doc. 45-4 at 6–8.   The Court has reviewed the grievance and finds it to be specific enough to give prison officials notice of the concerns forming the basis of Plaintiff's claims against Defendants DeGroot and Reno.

---

[4]     The Court notes that, although Defendants attached a copy of an SOP for Statewide Grievance Procedure to their Motion to Dismiss, it appears the affidavit they submitted as support for their Motion to Dismiss deals only with Plaintiff's use of the law library, a matter irrelevant to Defendants' Motion to Dismiss.   Doc. 45-3.

As Defendants DeGroot and Reno have failed to meet their burden of proving Plaintiff did not exhaust his administrative remedies, I **RECOMMEND** the Court **DENY in part** Defendant DeGroot and Reno's Motion to Dismiss, to the extent they contend Plaintiff failed to exhaust his administrative remedies under the PLRA.

## II.     Defendants' Motion to Dismiss for Failure to State a Claim

Defendants DeGroot and Reno have also moved this Court to dismiss Plaintiff's claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Docs. 45, 45-1.   Specifically, Defendants DeGroot and Reno allege Plaintiff fails to state a claim against them for deliberate indifference to his mental health needs under the Eighth Amendment. Doc. 45-1 at 12–18.   They also argue Plaintiff is not entitled to recover compensatory and punitive damages in this action.   Id. at 19–20.

After reviewing Defendants' Motion to Dismiss and Plaintiff's pleadings, as well as Plaintiff's Response to the Motion to Dismiss, doc. 53, and based on the following analysis, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, doc. 45, and **DISMISS** Plaintiff's claims against Defendants DeGroot and Reno.

### A.     Plaintiff's Allegations of Deliberate Indifference

According to Plaintiff, Georgia State Prison has over 1,200 inmates on the mental health caseload requiring the services of mental health counselors, and the facility only has six unlicensed counselors and one psychologist on staff, but no psychiatrists on staff.[5]   Doc. 16 at 5. Plaintiff has been diagnosed with serious depression, anti-social disorder, and gender identity disorder, as well as having a history of suicide attempts.   Id. at 6.   Since arriving at Georgia

---

[5]     Plaintiff's claims against Defendants are limited to the mental health treatment he received while incarcerated at Georgia State Prison.   Those claims are contained entirely in his Supplement, doc. 16 at 5–7, which Plaintiff filed with permission of the Court.   See Docs. 12, 15.

State Prison on January 24, 2017 through the date of his Supplement to the Complaint, Plaintiff was not seen by a psychiatrist.  Id. at 5–6.   Plaintiff states he was not seen by mental health staff after he cut his wrist on January 24, 2017.   Id. at 6.   However, he was seen by a psychologist on September 13, 2017.[6]   Id. at 5–6.   Plaintiff also states he was never pulled out of his cell for individual counseling at Georgia State Prison but, instead, was only permitted to talk to his counselor through the cell door, in hearing distance of the other inmates.   Id. at 6–7. He acknowledges having five different mental health counselors while at Georgia State Prison. Id. at 5.   Plaintiff also alleges that in August 2017, Defendant DeGroot recommended no changes to Plaintiff's treatment plan, despite Plaintiff's requests since January 2017 to see someone about medication and despite Plaintiff's repeated reports to his mental health counselor, former Defendant Gillis, he was "not okay and [needed] to see someone."   Id. at 6.

Along with complaining about the services he received personally, Plaintiff contends Defendant Reno, the Georgia State Prison mental health director, was aware of the lack of sufficient mental health treatment at Georgia State Prison.   Plaintiff alleges Georgia State Prison only employed six, unlicensed mental health counselors, despite housing over 1,200 inmates with mental health needs, including 400 inmates who need monthly counseling.   Id. at 5. Additionally, Georgia State Prison employs a single psychologist and no psychiatrist.   Id. Further, Plaintiff contends Defendant Reno is aware of the inadequate mental health treatment because he and a number of other inmates complain about the lack of treatment regularly, and a number of inmates committed suicide while incarcerated at Georgia State Prison.   Id. at 7.

---

[6]     In an exhibit to Plaintiff's Notice of Intent to Request Leave to File an Amended Complaint, he also alleges he filed a grievance about his mental health treatment on August 16, 2017 and was thereafter seen by a psychologist on August 31, 2017.  Doc. 8-6 at 3–4.   Thus, it may be that Plaintiff was seen by a psychologist on two occasions during the relevant period.   However, Plaintiff does not make any allegations about the August 31, 2017 visit in his Complaint or Supplement, so the Court does not consider that fact in resolving Defendants' Motion.

Based on the above, Plaintiff alleges Defendants DeGroot and Reno were deliberately indifferent to his serious mental health needs.   Id.   Specifically, Plaintiff brings a deliberate indifference of serious medical needs against Defendant DeGroot for the mental health treatment, or lack thereof, he received as his patient.   On the other hand, Plaintiff's claim against Defendant Reno is based on her maintaining a policy or custom of an inadequately staffed and licensed mental health department and a widespread history of harm (i.e., inmate suicides) arising from constitutionally deficient mental health care.

### B.   Standard of Review

When evaluating whether to dismiss a case or claim at the motion to dismiss stage, the Court "accept[s] the facts of the complaint as true and view[s] them in the light most favorable to the nonmoving party."[7]   Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004).   To prevent dismissal under Rule 12(b)(6), a plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Claims are plausible when the plaintiff pleads facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   To state a claim, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.   Twombly, 550 U.S. at 555.   Pro se pleadings such as Plaintiff's are liberally construed and held to a less

---

[7]      Although the Court permitted Plaintiff's mental health claims to proceed past frivolity review, that does not preclude this Court from granting Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).   See Hendrix v. Pactiv LLC, No. 19-CV-6419L, 2020 WL 5634329, at *3 (W.D.N.Y. Sept. 21, 2020) ("An initial screening decision permitting some claims to proceed does not amount to a judicial imprimatur endorsing the validity of those claims."); Murphy v. Warren, No. 1:12-CV-3317-WSD, 2015 WL 363023, at *6 n.1 (N.D. Ga. Jan. 27, 2015) ("[T]he Court's initial frivolity screening review, which was undertaken before Defendants were served and appeared, does not preclude a subsequent deeper analysis of whether the Complaint states a claim with the assistance of fully-briefed motions under Rule 12(b)(6).").

stringent standard than pleadings drafted by attorneys.   See Tannenbaum v. United States, 148

F.3d 1262, 1263 (11th Cir. 1998).

**C.    Plaintiff's Deliberate Indifference Claims Against Defendant DeGroot**

"[D]eliberate indifference to an inmate's need for mental health care is actionable on

eighth amendment grounds."   Greason v. Kemp, 891 F.2d 829, 834 (11th Cir. 1990).   However,

"not every claim by a prisoner that he has not received adequate medical treatment states a

violation of the Eighth Amendment."   Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)

(quotation and citation omitted).   "Medical treatment violates the eighth amendment only when

it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

intolerable to fundamental fairness.'"   Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)

(citation omitted).   To prevail on his claim of deliberate indifference, Plaintiff must allege: (1) a

serious mental health need; (2) deliberate indifference to that need on the part of the defendants;

and (3) causation.   See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009).

Defendant DeGroot does not address whether Plaintiff sufficiently states a serious mental

health need, and the Court will not focus on this element in its analysis.   Defendant DeGroot

does, however, argue Plaintiff fails to sufficiently allege the element of "deliberate indifference."

The element of deliberate indifference requires a showing of: "(1) subjective knowledge of a risk

of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."

Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007) (quotation and brackets omitted).

The Eleventh Circuit has stated, "It bears repeating that deliberate indifference is not a

constitutionalized version of common-law negligence.   To the contrary, we (echoing the

Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard . . . is

far more onerous than normal tort-based standards of conduct sounding in negligence," [cit.], and

is in fact akin to 'subjective recklessness as used in the criminal law,' [cit.]."   Swain v. Junior,
961 F.3d 1276, 1288 (11th Cir. 2020).   "As applied in the prison context, the deliberate-
indifference standard sets an appropriately high bar.   A plaintiff must prove the defendant acted
with 'a sufficiently culpable state of mind.'"   Id. at 1285.   Further, "a plaintiff must plead that
each Government-official defendant, through the official's own individual actions, has violated
the Constitution."   Iqbal, 556 U.S. at 676.

Plaintiff has failed to sufficiently allege Defendant DeGroot, through his individual
actions, exhibited deliberate indifference to Plaintiff's mental health needs.   Plaintiff alleges
only that Defendant DeGroot recommended a certain treatment plan for Plaintiff.   Doc. 16 at 6.
However, Plaintiff does not allege Defendant DeGroot had subjective knowledge of a risk to
Plaintiff and disregarded that risk.   See Nam Dang by and through Vina Dang v. Sheriff,
Seminole Cnty., 871 F.3d 1272, 1280 (11th Cir. 2017) ("An official disregards a serious risk by
more than mere negligence 'when he [or she] knows that an inmate is in serious need of medical
care, but he [or she] fails or refuses to obtain medical treatment for the inmate.'").   In fact,
Plaintiff alleges his mental health counselor's reports typically noted Plaintiff was "doing
alright."   Doc. 16 at 6.   Plaintiff also acknowledges he saw a psychologist on September 13,
2017, after complaining about his August 2017 treatment plan.[8]   Id. at 5–6.   Thus, upon
questioning Defendant DeGroot's treatment plan and the level of counseling he received,
Plaintiff was seen by a psychologist.   Id.

Further, Plaintiff alleges he received weekly visits from mental health counselors, a
mental health treatment plan was in place for him, and upon questioning the sufficiency of his

---

[8]       As noted above, Plaintiff also alleges he filed a grievance about his mental health treatment on
August 16, 2017, and was thereafter seen by a psychologist on August 31, 2017.   Doc. 8-6 at 3–4.
However, that allegation is not contained in Plaintiff's Complaint or Supplement.

updated health treatment plan, he met with a psychologist.   Doc. 16 at 6.   Overall, at least as to

Defendant DeGroot, Plaintiff's claim appears to amount to a "simple difference in medical

opinion between the prison's medical staff and the inmate as to the latter's . . . course of

treatment" and accordingly does not support a claim of cruel and unusual punishment.   Harris,

941 F.2d 1495 at 1505.

These allegations, even assumed to be true, simply do not amount to "(1) grossly

inadequate care; (2) a decision to take an easier but less efficacious course of treatment; [or]

(3) medical care that is so cursory as to amount to no treatment at all."   Bingham v. Thomas,

654 F.3d 1171, 1176 (11th Cir. 2011).   "[W]here a prisoner has received some medical attention

and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to

second guess medical judgments and to constitutionalize claims which sound in state tort law."

Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1272 (11th Cir. 2020).   While Plaintiff

expresses dissatisfaction with Defendant DeGroot's initial treatment recommendation, he does

not allege actions by DeGroot rising to the level of deliberate indifference.

To the extent Plaintiff seeks to hold Defendant DeGroot liable based on his supervisory

positions in the prison mental health system, such claim also fails.   "Section 1983 claims may

not be brought against supervisory officials solely on the basis of vicarious liability or respondeat

superior."   Averhart v. Warden, 590 F. App'x 873, 874 (11th Cir. 2014) (citing Keating v. City

of Miami, 598 F.3d 753, 762 (11th Cir. 2010)).   Rather, "[a] supervisor can be held liable under

§ 1983 if he personally participates in the alleged constitutional violation or if a causal

connection exists between his acts and the constitutional infirmity."   Id.   "A causal connection

can be established when a history of widespread abuse puts the responsible supervisor on notice

of the need to correct the alleged deprivation and he fails to do so; when the supervisor's

improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."   Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008).

As to Defendant DeGroot, Plaintiff only alleges Defendant DeGroot recommended Plaintiff continue with the same treatment plan, while Plaintiff, in turn, sought more comprehensive treatment.   Doc. 16 at 6.   Plaintiff fails to include any allegations in his Supplement to Complaint which suggest a theory of supervisory liability against Defendant DeGroot.[9]

Additionally, Plaintiff's cannot prevail on his Eighth Amendment claim against DeGroot because he fails to sufficiently allege the final element of the claim, causation.   See Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007) (noting requirement of causal connection in Eighth Amendment cases).   Defendants correctly note Plaintiff fails to allege he was actually harmed as a result of the level of care he received at the institution.   Doc. 45-1 at 19.   Plaintiff outlines several underlying, and arguably serious, mental health conditions and multiple suicide attempts, doc. 16 at 6, but he does not allege these conditions and events were caused, impacted, or otherwise exacerbated by Defendants' alleged deliberate indifference.   For example, Plaintiff alleges he "cut his wrist on Jan. 24, 2017," doc. 16 at 6, but he also identifies

---

[9]      In his Response to Defendants' Motion to Dismiss, Plaintiff identifies Defendant DeGroot as the "statewide mental health director" and notes he "made a memo that denied the treatment of level II mental health inmates of seeing a psychologist every 90 days . . . because it saves money, and the prison did not have adequate or qualified staff."   Doc. 53 at 3.   He also alleges DeGroot signed off on the treatment of inmates without even seeing them or ever treating them due to lack of adequate and qualified staff.   However, the Court is not permitted to consider these additional allegations, as the scope of its review "must be limited to the four corners of the complaint."   St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).   Moreover, Plaintiff has not made any effort to amend his Complaint further.

January 24, 2017, as the day he was transferred into Georgia State Prison.   Doc. 1 at 9 ("After

arriving at Ga State Prison on Jan. 24, 2017, I was taken to my new cell . . . ."); Doc. 16 at 6 ("I

have been here at G.S.P. since Jan. 24, 2017 . . . .).   There is nothing in the Supplement to

Complaint to suggest this January 24, 2017 suicide attempt was caused by Defendant DeGroot's

deliberate indifference, nor could it be.   Indeed, Plaintiff's claim against Defendant DeGroot is

based on his alleged failure to receive sufficient mental health treatment in the many months

after his arrival at Georgia State Prison.   Doc. 16 at 5–7.   Plaintiff refers to other suicide

attempts through overdosing, but he does not state when these incidents occurred, only generally

alleging they occurred within 16 months prior to the drafting of his Supplement to Complaint,

doc. 16 at 6, a time period that includes the time before Plaintiff was transferred to Georgia State

Prison.   There are no other allegations of injury, whether physical or emotional.   Accordingly,

the failure to allege a causal connection between Defendants DeGroot's alleged deliberate

indifference and an actual injury to Plaintiff is fatal to his claim.

 As outlined above, Plaintiff fails to allege Defendants DeGroot's actions caused him

actual harm.   Additionally, there is no threat of imminent harm, as Plaintiff has since moved to

another prison, doc. 69 (notifying Court of Plaintiff's transfer to Hays State Prison).   See

McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that

a prisoner's transfer or release from a jail moots his individual claim for declaratory and

injunctive relief."); see also Robbins v. Robertson, 782 F. App'x 794, 800 (11th Cir. 2019)

(noting "an injunction directing his former prison officials to provide Plaintiff with a particular

diet would provide Plaintiff with no relief").   Accordingly, I **RECOMMEND** the Court

**DISMISS** Plaintiff's deliberate indifference claim against Defendant DeGroot based on

Plaintiff's failure to state a claim.

**D.      Plaintiff's Policy or Custom Claim Against Defendant Reno**

Plaintiff brings a deliberate indifference claim against Defendant Reno, the mental health director for Georgia State Prison, based on a policy or custom of constitutionally deficient mental health care.   As noted above, "[s]ection 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or respondeat superior."   Averhart, 590 F. App'x at 874 (citing Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). Rather, "[a] supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity."   Id.

The existence of a causal connection can be demonstrated in several ways.   If "a history of widespread abuse puts the responsible supervisor on notice of the need to correct [an] alleged deprivation, and [s]he fails to do so," then a causal connection exists.   Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).   However, the constitutional deprivation involved must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."   Id.   A causal connection can also be shown where a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights."   Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).   Finally, a causal connection can be inferred from "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."   Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).   "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."   Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 802 (11th Cir. 1998).

Here, Plaintiff alleges the mental health services, overseen by Defendant Reno, lacked

adequate staffing in terms of both numbers and counselor qualifications.   Doc. 16 at 5.

Specifically, he alleges Georgia State Prison houses over 1,200 inmates with mental health

needs, including more than 400 inmates who require monthly counseling, but Georgia State

Prison has only six unlicensed mental health counselors to provide counseling to inmates, a

single psychologist, and no psychiatrist.   Id.   Additionally, Plaintiff complains counselors will

not remove inmates from their cells for counseling, compromising their confidentiality.   Id. at 7.

Plaintiff states he and other inmates have complained about the lack of adequate mental health

care, including the lack of confidentiality, to Defendant Reno.   Id.   Finally, Plaintiff alleges

Defendant Reno is aware of the mental health services inadequacies because "a number of

inmates have killed [themselves] in the past 13 months" due to inadequate mental health

treatment.   Id.   In sum, Plaintiff alleges the prison's policy or custom of employing inadequate,

unlicensed staff and insufficient confidentiality protections amount to a constitutionally deficient

mental health care and the prior suicides put Defendant Reno on notice of these deficiencies.[10]

     In order for Plaintiff to succeed on a claim that Defendant Reno employed a custom or

policy that resulted in the deliberate indifference to prisoner's a serious medical need claim, he

must show constitutionally inadequate care.   Cook ex rel. Estate of Tessier v. Sheriff of Monroe

Cnty., 402 F.3d 1092, 1116 (11th Cir. 2005) (explaining sheriff's policies or customs must

themselves evidence a deliberate indifference to, and therefore, a subjective awareness of, a

---

[10]   Plaintiff does not argue Defendant Reno is the final policy maker, but instead simply states she is
the state-wide mental health director for the Georgia Department of Corrections.   This is not fatal to
Plaintiff's claim.   When considering whether a supervisor could be liable for a custom or policy resulting
in deliberate indifference, there is no requirement the supervisor actually created the policy. See, e.g.,
Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) ("An official may also be liable where a policy
or custom that he established or utilized results in deliberate indifference to an inmate's constitutional
rights."); Arenas v. Ga. Dep't of Corr., No. CV416-320, 2018 WL 988099, at *4–5 (S.D. Ga. Feb. 20,
2018).

substantial risk of serious harm).   Plaintiff argues the policy of unlicensed mental health staff constitutes deliberate indifference, citing to Hartman v. Correctional Medical Services, Inc., 960 F. Supp. 1577 (M.D. Fla. 1996).   Doc. 53 at 3.   In that case, the jail allowed an individual without a master's degree or other professional license, to have primary responsibly for the care of seriously mentally ill patients.   Hartman, 960 F. Supp. at 1582–83.   Further, the policy permitted this unlicensed individual to determine when an inmate should be referred to a qualified mental health professional and when an inmate should be placed on suicide prevention protocol.   Id.   Here, Plaintiff's allegations are limited to unlicensed professionals providing regular counseling sessions to inmates.   Doc. 16 at 5–6.   In fact, Plaintiff states Defendant DeGroot, a licensed psychologist, oversaw his treatment, including coordinating with his mental health counselor and developing his treatment plan.   Id.   Unlike Hartman, in this case, there are no allegations an unlicensed individual was primarily responsible for treating inmates.   Instead, Plaintiff alleges some unlicensed providers perform one component of inmates' treatment—namely, regular counseling—and, as to Plaintiff, a licensed provider oversaw his care.

Similarly, courts have also acknowledged "[d]eliberate indifference to inmates' health needs may be shown . . . by proving that there are 'such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care.'"   Harris, 941 at 1505 (citation omitted).   Plaintiff states the understaffing results in constitutionally inadequate mental health care and the inadequate care has resulted in the death of a number of inmates.   Doc. 16 at 5–7.   Allegations of understaffing generally, however, are "more akin qualitatively to the types of systemic inadequacies that federal courts have been ill-suited and justifiably reluctant to entertain as evils of constitutional consequence."   Harris, 941 F.2d at 1510–11 (concluding no deliberate indifference while

"acknowledg[ing] the likelihood that [the prison] is not ideally staffed and the quality of its mental health care perhaps is substandard").

In <u>Harris</u>, the prison employed a single psychologist for approximately 300 inmates, which the Court of Appeals found constitutionally adequate.   <u>Id.</u> at 1510.   There, the Court of Appeals determined, because the psychologist provided various types of counseling and other services, even if substandard, was not constitutionally inadequate.   <u>Id.</u>   Here, Plaintiff's allegations are similar—though less egregious and largely conclusory.   Plaintiff simply states the prison was understaffed.   However, he also alleges he was personally provided with regular counseling sessions and visits from his counselor, former Defendant Gillis, as well as literature on "Christian coping methods," his treatment was overseen by Defendant DeGroot, a psychologist, and he was seen a psychologist on at least one occasion during the relevant period. Doc. 16 at 5–7.   Moreover, Plaintiff does not make any allegations about how the alleged understaffing actually affected the care received; instead, he alleges he received regular mental health treatment, albeit not in the form, manner, or frequency he preferred.   Thus, Plaintiff fails to sufficiently allege Defendant Reno's alleged policy or custom of understaffing constituted deliberate indifference to prisoners' mental health needs.

Plaintiff's allegations about the lack of confidential counseling sessions fail to allege an unconstitutional policy or custom for the same reason—the policy or custom of counseling inmates in their cells does not plausibly describe constitutionally inadequate care.   Even assuming a failure to provide confidential counseling sessions to inmates rose to the level of malpractice, this would not be enough to state a claim.   <u>See, e.g.</u>, <u>Harris</u>, 941 F.2d at 1505 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) ("Mere incidents of [medical] negligence or malpractice do not rise to the level of constitutional violations.")).   That is, Defendant Reno, as

the Director of Mental Health services for Georgia State Prison, creating or utilizing a policy that does not provide confidential counseling does not show deliberate indifference to prisoners' serious medical needs.   As explained above, it appears to be a mere disagreement about the most effective form of treatment.   Thus, such allegations cannot form the basis for a policy or custom claim against Defendant Reno because, even taking the allegations as true, the allegations do not allege an unconstitutional policy or custom.

Finally, Plaintiff also alleges the facility, which again is under the direction of Defendant Reno, failed to comply with certain prison policies regarding 90-day appointments with a psychologist and individual counseling every 30 days.   Doc. 16 at 4– 6.   However, "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."   Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000), see also Nam Dang, 871 F.3d at 1282 ("A violation of Jail policy does not in itself rise to the level of deliberate indifference.").   Additionally, the mere fact appointments and counseling sessions do not occur more frequently, without more, does not constitute constitutionally inadequate care.

For these reasons, I conclude Plaintiff fails to state a claim of deliberate indifference to his mental health needs against Defendant Reno, and therefore, **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, doc. 45.   Because Plaintiff fails to allege constitutionally inadequate care, it is unnecessary to address whether prior prison suicides put Defendant Reno on notice of any deficiencies in Georgia State Prison's mental health care.

### E.        Plaintiff's Claims for Compensatory and Punitive Damages

Defendants also seek dismissal of Plaintiff's claims for compensatory and punitive damages.   Doc. 45-1at 19–20.   In light of the above recommendation for dismissal of the

underlying claims against Defendants DeGroot and Reno, the Court declines to address Defendants' arguments.

### III.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.   Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.   See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.   28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).   Good faith in this context must be judged by an objective standard.   Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).   A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.   See Coppedge v. United States, 369 U.S. 438, 445 (1962).   A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.   Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).   An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."   Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendants' Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.   Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

As laid out above, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims based on Plaintiff's failure to state a claim.   Doc. 45.   As no other claims or Defendants would remain in this action, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.   I **DENY as moot** Plaintiff's Request to Proceed with Discovery, doc. 74.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.   Objections shall be specific and in writing.   Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.   Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.   28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191–92 (11th Cir. 2020).   To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.   Harrigan, 977 F.3d at 1191–92; 11th Cir. R. 3-1.   A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.   Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.   Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 5th day of February,

2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA